IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAUREEN BALKIEWICZ** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 20-2148 |
| | : | |
| **WAWA, INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                NOVEMBER 9, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Maureen Balkiewicz ("Plaintiff") filed a complaint against her former employer, Defendant Wawa, Inc. ("Defendant" or "Wawa"), on May 4, 2020, [ECF 1], which was amended, [ECF 11], alleging that Defendant: (a) discriminated against her on the basis of her disability and failed to accommodate her disability in violation of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008 (collectively, the "ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*; (b) retaliated against her in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and (c) discriminated against her on the basis of her race in violation of 42 U.S.C. § 1981.

Before this Court are Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 19], Plaintiff's response in opposition, [ECF 21], and Defendant's reply, [ECF 22]. The issues raised in the motion are fully briefed and ripe for disposition. For the reasons set forth herein, Defendant's motion for summary judgment is granted, and judgment will be entered in favor of Defendant and against Plaintiff on all of Plaintiff's claims.

**BACKGROUND**

As noted, Plaintiff asserts claims for disability discrimination and failure to accommodate under the ADA and the PHRA, retaliation under the FMLA, and race discrimination under § 1981. Defendant moves for summary judgment on all these claims. In her response, Plaintiff stipulates to the dismissal of her claims under the FMLA, the ADA, and the PHRA, except those claims for failure to accommodate. (Pl.'s Resp., ECF 21-4, at p. 4). Accordingly, this Court will address *only* Plaintiff's claims for failure to accommodate under the ADA and the PHRA and her claim of race discrimination under § 1981.

When considering a motion for summary judgment, a court must consider all record evidence and relevant facts in the light most favorable to the nonmoving party—here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to this motion are summarized as follows:[1]

> Plaintiff, a white woman, began working for Defendant in April 2012 as a customer service associate ("CSA"). The responsibilities of a CSA include supporting the store's management team and performing tasks such as "customer service, food and beverage preparation, cash register duties, general housekeeping, and other related functions." (Pl. Dep., ECF 20-1, 12:13–13:8).

> *Facts Related to Plaintiff's Failure to Accommodate Claims*

> In late 2017, Plaintiff was diagnosed with breast cancer and took a series of medical leaves from her position with Defendant. During her fourth period of medical leave that commenced on April 2, 2019, Plaintiff underwent a hysterectomy.

> On May 2, 2019, Plaintiff's physician provided Plaintiff with a letter noting that she would be ready to return to work on May 6, 2019, "with the following restrictions: No lifting greater than 10 lbs until 5/20/19." (Letter from Office of Emily Ko, M.D., MSCR, Div. of Gynecologic Oncology, Dep't of Obstetrics &

---

[1] These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any facts are disputed, such disputes are noted and construed in the light most favorable to Plaintiff. *Galena*, 638 U.S. at 196.

Gynecology, Penn Med. (May 2, 2019), Def.'s Reply, ECF 22, at p. 2). Plaintiff provided the letter to Defendant.

Plaintiff's physician also completed a Return to Work Report dated May 2, 2019. The report noted that Plaintiff could work an eight-hour day but could only sit, stand, or walk for up to four hours at a time. The report also noted absolute restrictions on lifting and carrying weight over ten pounds until May 20, 2019, and "minimal" restrictions on lifting and carrying weight under ten pounds, as well as bending, crawling, squatting, twisting, pushing, and pulling. (Wawa Return to Work Report, ECF 21-8, at pp. 5–7). Defendant received this report via fax.

Also on May 2, 2019, Vicki Rushie, an employee of Defendant, sent an email to Mr. Ramirez—the general manager of the Wawa location where Plaintiff worked—explaining that, per Plaintiff's doctor, Plaintiff could not lift more than ten pounds until May 20, and inquiring whether he would be able to accommodate this restriction. Mr. Ramirez responded, "Yes, will do." (Ramirez Dep., ECF 20-2, 19:12–20:9).

On May 3, 2019, Defendant's Leave Administration sent Plaintiff a letter regarding her request for reasonable accommodations. The letter explained that Plaintiff would be provided the accommodation "no lifting more than 10 lbs" between May 6 and May 20, 2019. (Letter from Leave Admin., Wawa, Inc., to Maureen Balkiewicz (May 3, 2019), ECF 22, at p. 3). The letter also noted:

> The duty to provide reasonable accommodation is an ongoing one so you can ask for more than one accommodation, if needed. If you need to request additional accommodations, simply contact Leave Administration to request a new accommodation and follow the process to further engage in the interactive process with your manager and Leave Administration. . . . If the agreed upon accommodation turns out to be ineffective and you remain unable to perform an essential job function, management will consider whether there may be an alternative reasonable accommodation that would not pose an undue hardship.

*Id.*

Plaintiff returned to work on May 6, 2019. Sometime after her return, Mike (last name not identified), one of the store managers where Plaintiff worked, asked Plaintiff to clean the women's bathroom, a task not part of Plaintiff's usual job duties. Plaintiff told Mike that she was not comfortable cleaning the bathroom and refused to do it. Plaintiff later complained to another manager working that day

about Mike's request, mentioning "too many germs." (Pl. Dep., ECF 20-1, 75:14).[2] Neither Mike nor the other manager requested that Plaintiff clean the bathroom on any subsequent occasion.

After Plaintiff returned from her medical leave, she often requested breaks after three to four hours of work or halfway through her shifts. Some of these break requests were denied by Mike. Plaintiff alleges that while Mike "was not accommodating" of her requests for breaks, two specific other managers were accommodating. (*Id.* 91:14–15). However, Plaintiff did not raise the issue of these denials, or the request to clean the bathroom, with either Mr. Ramirez or Leave Administration.

### *Facts Related to Plaintiff's Reverse Race Discrimination Claim*

All customer service associates, such as Plaintiff, are required to follow the policies outlined in the Wawa Associate Handbook (the "Handbook"). According to the Handbook, certain CSA behaviors may warrant disciplinary action. These behaviors include, *inter alia*, "[c]reating conflict with . . . customers," "[i]nsubordination," "[p]oor customer service," [t]hreatening or confrontational behavior towards . . . customers," "[t]reating . . . customers . . . unprofessionally," and "[v]iolating any Wawa policy." (Wawa Associate Handbook, ECF 21-8, at pp. 13–15).

The Handbook includes a policy titled "Non-Escalation (Including Shoplifting)" (the "Non-Escalation Policy"). This policy was adopted by Defendant in response to a highly publicized incident at a Starbucks store involving the racial profiling of an African American customer by employees. The Non-Escalation Policy defines "shoplifting" as "the act of concealing, consuming or taking merchandise without paying." (*Id.* at p. 16). The policy instructs that "[a]ssociates who suspect or observe shoplifting should not approach the individual or group," but rather should notify the manager on duty. (*Id.*).

Sometime after Plaintiff's return from medical leave on May 6, 2019, Plaintiff witnessed a man take merchandise from the store without paying. She observed that he was African American and that he drove a Ford Explorer. Plaintiff told an assistant general manager, Britt Williams, "Every time that guy comes in, he steals." (Pl. Dep., ECF 20-1, 27:15–17). Mr. Williams later told Plaintiff that he had also observed the same customer steal on a different occasion. Mr. Williams told Plaintiff, "The next time you see this customer, tell the manager on duty." (*Id.*

---

[2] In her brief, Plaintiff contends that the reason she could not clean the bathroom was because of her restrictions on lifting, bending, and squatting. However, she presents no evidence that she expressed this reasoning to Mike or any other manager at the time. Instead, Plaintiff presents evidence *only* that she refused to clean the bathroom because it was dirty and contained germs.

4

27:18–23). He also said the man was "banned" from the store and repeated that Plaintiff should inform the manager on duty if the man came back. (*Id.* 28:4–5).

On August 18, 2019, an African American male customer entered the store where Plaintiff worked. Based on the customer's height, build, and "whole overall appearance," Plaintiff believed that the customer was the person she had previously observed shoplifting. (*Id.* 29:4–22). Plaintiff told Mike, the manager on duty that day, of her suspicion.

Mike approached the customer and began talking to him. A few seconds later, Plaintiff came up behind Mike.[3] During the interaction between the three of them, Mike told the customer that he believed the customer was not the suspected shoplifter and that he did not believe Plaintiff's assertions. In response to Mike's statements, the customer cursed at Plaintiff, stepped toward her, and pushed a cart toward her. Plaintiff then began to ask the customer questions, including whether he had spoken to Mr. Williams before and what kind of vehicle he drove.

The interaction between Plaintiff, Mike, and the customer was captured on video by a security camera in the store. The customer also recorded the interaction on his cell phone. Later that day, the customer posted portions of the video he recorded on Twitter, along with a caption explaining that he had been racially profiled at the store. The next day, the customer's girlfriend posted the video on Facebook, also alleging that the customer had been racially profiled.

Within a day of the incident, Plaintiff sent Mr. Ramirez a text message stating, "Hey, just want to say I am sorry about confronting that customer." (Pl. Dep., ECF 20-1, 24:14–15).[4]

On August 18 or 19, 2019, Mr. Ramirez contacted his area manager, Victoria Schwartz, to discuss what had happened between Plaintiff, Mike, and the customer. During their conversation, Mr. Ramirez informed Ms. Schwartz that he was planning on issuing a written warning to Plaintiff.

On August 19, 2019, Mr. Ramirez met with the customer and his girlfriend at the store to discuss the incident. After this meeting, the girlfriend updated her

---

[3] Plaintiff specifically denies that she "approached" the customer. (Pl.'s Answer to Def.'s Statement of Undisputed Material Facts, ECF 21-3, ¶ 13). She instead alleges that Mike "said something to her before he approached the customer and the Plaintiff then came over to observe, to see if it was the customer to whom he was speaking." (*Id.*).

[4] While admitting she sent this text message, Plaintiff disputes that she "confronted" the customer. (Pl. Dep., ECF 20-1, 24:16–18). She maintains that it was Mike, not her, who confronted the customer, and that she was "pulled into the situation by Mike." (*Id.* 24:22–25:3).

5

Facebook post and noted that Mr. Ramirez had told her Plaintiff would be issued a warning.

On August 20, 2019, Mr. Ramirez drafted a *Facts, Objectives, Solutions, and Answers* ("FOSA") form in connection with the incident. The form indicated that Plaintiff had demonstrated "[p]oor customer service" and had "approached a customer accusing him of being a known shoplifter." (FOSA Form for Maureen Balkiewicz (Aug. 20, 2019), ECF 21-9, at p. 12). Mr. Ramirez further noted that he had reviewed the relevant Handbook policies with Plaintiff and issued a final warning. The FOSA form indicated that any further policy violation by Plaintiff within the next year would result in termination.

Around this time, Ms. Schwartz decided to speak with Mr. Ramirez again. She wanted to make sure that his investigation of the incident had been sufficiently thorough. Ms. Schwartz believed that Mr. Ramirez needed to "do a little bit more research with talking with the manager on duty and with any other associate in the store at the time, and video. I don't think he had time to do any of that." (Schwartz Dep., ECF 20-3, 12:17–22).

Ms. Schwartz visited the store where Plaintiff worked and reviewed the security camera footage of the incident. She spoke with Mr. Ramirez and told him that Plaintiff's behavior was "clearly a violation of several of [Defendant's] policies" and that termination was warranted. (*Id.* 15:20–23). Although Ms. Schwartz was "aware" that there was social media discourse regarding the incident, social media did not "come into play" in her decision. (*Id.* 21:9–22:6).

On August 22, 2019, Mr. Ramirez prepared another FOSA form and terminated Plaintiff from her position. Mr. Ramirez testified that this change from August 20 to August 22 was the result of "more investigation taking place and we were able to gather more details about the incident." (Ramirez Dep., ECF 20-2, 46:4–7). The second FOSA form stated that Plaintiff was terminated because she "approached a customer and accused him of being a known shoplifter." (FOSA Form for Maureen Balkiewicz (Aug. 22, 2019), ECF 21-9, at p. 14).

When asked which policy or policies Plaintiff had violated warranting termination, Mr. Ramirez testified, "I believe it was discrimination." (Ramirez Dep., ECF 20-2, 48:12–17). He later testified that Plaintiff was fired for her violation of the Non-Escalation Policy. (*See id.* 55:2–56:17). Meanwhile, Ms. Schwartz testified that Plaintiff was fired for "confrontational behavior towards a customer, treating customers unprofessionally, . . . and violating our shoplifting policy." (Schwartz Dep., ECF 20-3, 24:6–11).

Mike was also fired in connection with the incident for violating the Non-Escalation Policy.

After her termination, Plaintiff appealed the decision through Defendant's internal, three-step conflict resolution program. The first step involved a review by Shana Hunt, a senior associate relations specialist. After reviewing the security camera footage, the social media posts, a statement from Plaintiff, and other documents, Ms. Hunt concluded that Plaintiff had violated the Non-Escalation Policy and the code of business conduct. Specifically, Ms. Hunt wrote in her decision that Plaintiff "violated company expectations" and that Plaintiff's actions had prevented Mike from being able to deescalate the situation. (Letter from Shana Hunt, Senior Assoc. Relations Specialist, Wawa, Inc., to Maureen Balkiewicz (Sept. 5, 2019), ECF 21-10, at p. 16). Ms. Hunt testified that she "could assume" that Plaintiff was white based on the video footage, but she did not know for certain what Plaintiff's race was at the time of her decision.

At the second step of the conflict resolution program, two independent area managers jointly reviewed the decision. The first manager, Cody Lilly, spoke with Plaintiff via phone and reviewed the security camera footage, statements by Plaintiff, and video posted by the customer on Twitter before determining Plaintiff had violated the Non-Escalation Policy. The second manager, Claire Mann, also reviewed the security camera footage and determined Plaintiff had caused a conflict with a customer in violation of Defendant's policies. Mr. Lilly and Ms. Mann testified that they were unaware of Plaintiff's race at the time of their decision.

At the final step of the conflict resolution program, a panel of three director-level employees reviewed the decision. One panelist, Jason Read, testified that he reviewed the documentation relied on by Ms. Hunt, Mr. Lilly, and Ms. Mann, the surveillance footage, and statements of the witnesses and manager. The panel did not discuss any complaints of racial profiling while deliberating. Mr. Read concluded that Plaintiff's recollection of the incident was inconsistent with the evidence, and that Plaintiff had "approach[ed]" and "harass[ed]" the customer in violation of Defendant's policies. (Read Dep., ECF 20-7, 12:9–20, 17:14–19). The panel affirmed the termination decision and concluded that Plaintiff's "account of the events that led to her termination were inconsistent with video footage, witness accounts, and information that she provided at the time of the hearing that was reviewed thereafter." (Letter from Chris Friez, Senior Assoc. Relations Specialist, Wawa, Inc., to Maureen Balkiewicz (Sept. 26, 2019), ECF 21-12, at p. 9). Mr. Read testified that he could tell from the video footage that Plaintiff is white.

7

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* That is, when reviewing a motion for summary judgment, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A disputed issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). A factual dispute is material only if it might affect the outcome of the suit under governing law. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *See Anderson*, 477 U.S. at 248–49.

Under Rule 56(c), the movant bears the initial burden of showing that there is no genuine issue of material fact by identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact," and that it is entitled to relief. *See Celotex Corp.*, 477 U.S. at 323. This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. Once the moving party has met its initial burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), offering concrete evidence supporting each essential element of the claim. *See Celotex Corp.*, 477 U.S. at 322–23. Summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P 56(c)(1)(A)–(B). The non-moving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which said party bears the burden of production, *Anderson*, 477 U.S. at 252, and may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). There must be evidence on which the jury could reasonably find for the non-movant. *See Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (quoting *Anderson*, 477 U.S. at 252).

In deciding a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scheidemantle*, 470 F.3d at 538; *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises that cannot be resolved without a credibility determination, at this stage, the court must credit the non-moving party's evidence over that presented by the moving party. *See Anderson*, 477 U.S. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. *Id.* at 250.

**DISCUSSION**

As noted, Plaintiff claims that Defendant violated the ADA and the PHRA by failing to accommodate her disability upon her return from medical leave, and that Defendant violated § 1981 by intentionally discriminating against her on the basis of her race when it terminated her employment. These claims will be addressed in turn.

### *Failure to Accommodate*

Plaintiff asserts that Defendant failed to accommodate her disability, *i.e.*, her physical limitations related to her cancer treatment and hysterectomy, as required under both the ADA[5] and the PHRA.[6] Specifically, Plaintiff contends that Defendant violated these statutes by failing to provide the reasonable accommodations of frequent breaks and limits on lifting, bending, and squatting. Defendant moves for summary judgment on these claims on the basis that Plaintiff has failed to meet her evidentiary burden. This Court agrees with Defendant and finds that Plaintiff has not established a *prima facie* case of disability discrimination based on failure to accommodate.

An employer violates the ADA if it fails to provide reasonable accommodations to an employee for that employee's disability. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573 (E.D. Pa. 2017). Claims for failure to accommodate under the ADA and the PHRA are analyzed under the same

---

[5] The ADA prohibits an employer from discriminating against an employee on the basis of disability. 42 U.S.C. §§ 12111, 12112(a). Unlawful discrimination includes, *inter alia*:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . .

*Id.* § 12112(b)(5)(A).

[6] The PHRA prohibits a Pennsylvania employer from discriminating against an employee on the basis of the employee's "non-job related handicap or disability." 43 Pa. Cons. Stat. § 955 & 955(a).

standards. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). To establish a *prima facie* case of disability discrimination under these statutes, a plaintiff must show that: (1) she has a disability within the meaning of the ADA, (2) she is a "qualified individual," and (3) she suffered an adverse employment action based on her disability. *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314 (E.D. Pa. 2018) (citing *Williams v. Phila. Hous. Auth. Police Dep't*, 308 F.3d 751, 761 (3d Cir. 2004) and *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001)). Failure to provide reasonable accommodations for an employee's disability constitutes an "adverse employment action" for purposes of a *prima facie* case. 42 U.S.C. § 12112(b)(5)(A); *see also Reyer*, 243 F. Supp. 3d at 594. A claim based on failure to accommodate does not require the plaintiff to show the employer was "motivated by a discriminatory animus directed at the disability." *Reyer*, 243 F. Supp. 3d at 594 (quoting *Sharbaugh v. W. Haven Manor, LP*, 2016 WL 6834613, at *8 (W.D. Pa. Nov. 21, 2016). Instead, in addition to the first two *prima facie* elements, the plaintiff must demonstrate that: (1) the employer knew of the plaintiff's disability, (2) the plaintiff requested a reasonable accommodation, (3) the employer did not make a good faith effort to make such accommodation, and (4) the plaintiff could have been reasonably accommodated. *Taylor*, 184 F.3d at 319–20.

Plaintiff proffers two bases for her failure to accommodate claims. First, Plaintiff argues that Mike, a manager at the store where she worked, "consistently den[ied] her break requests which she would make halfway through her shifts." (Pl.'s Resp., ECF 21-4, at p. 8). Second, Plaintiff contends that Defendant failed to accommodate her disability when Mike requested that she clean the store's bathroom, despite her limitations with respect to lifting, bending, and squatting. (Pl.'s Resp., ECF 21-4, at p. 8). Defendant denies these contentions. Based on the

evidence of record, this Court finds that Plaintiff has failed to establish a *prima facie* case of disability discrimination on either ground.

That is, Plaintiff cannot establish a *prima facie* case based on the alleged denials of her break requests because there is insufficient evidence from which a reasonable factfinder could conclude that Defendant did not make a good faith effort to accommodate Plaintiff. *See Taylor*, 184 F.3d at 319–20. In *Taylor,* the United States Court of Appeals for the Third Circuit (the "Third Circuit") explained that an employer may demonstrate its good faith effort to engage in the "interactive process" of accommodating an employee with a disability in several ways, including by showing that they met with the employee, requested information about the employee's limitations, asked the employee what they wanted, showed "some sign of having considered" the employee's request, or discussed alternatives if the employee's request was burdensome. *Id.* at 317. Leaving the door open to further accommodations may suffice as an indication of an employer's good faith effort. *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 40 (3d Cir. 2018) (citing *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 806–07 (7th Cir. 2005)).

Here, consistent with the *Taylor* court's requirements, Defendant has demonstrated its good faith effort to accommodate Plaintiff's disability. Upon receipt of Plaintiff's doctor's note and the Return to Work Report, Defendant promptly notified Plaintiff of an approved accommodation—no lifting more than ten pounds until May 20, 2019. With that notification, Defendant also made clear that Plaintiff could "simply contact Leave Administration to request a new accommodation and follow the process to further engage in the interactive process" if she was unsatisfied with the accommodation she received. (Letter from Leave Admin., Wawa, Inc., to Maureen Balkiewicz (May 3, 2019), ECF 22, at p. 3). This letter evinces Defendant's consideration of Plaintiff's requests and its willingness to provide further accommodations if Plaintiff felt she needed them.

However, it is apparent that Plaintiff did not request other accommodation from Defendant, even when her break requests were allegedly denied by her manager. *See Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 342 (M.D. Pa. 2015) (granting summary judgment for employer where the employer engaged in the interactive process in good faith while the employee "failed to maintain adequate communication"). Nor has Plaintiff presented any evidence that she complained about the denials of any accommodations to Mr. Ramirez or anyone else before commencing this lawsuit. As Plaintiff has failed to present any evidence to show that Defendant did not make a good faith effort to accommodate her, the alleged break request denials cannot form the basis of a viable failure to accommodate claim. As such, this Court need not address the remaining prongs of the test set forth in *Taylor*.[7]

Plaintiff also cannot establish a *prima facie* case based on Mike's one-time request that she clean the bathroom. That is, this event cannot form the basis for an ADA or PHRA violation as Plaintiff was never actually denied any accommodation. Plaintiff readily admits that she refused to clean the bathroom, did not do so, and nothing happened. Plaintiff further admits that she was not disciplined for having voiced her refusal and that neither Mike nor any other manager ever asked her again to clean a bathroom after she refused the first request. While Plaintiff may have been upset to have been asked to do this task, it is undisputed that (1) Plaintiff refused to clean the

---

[7]     In its motion, Defendant also argues that it lacked sufficient notice of Plaintiff's need for the accommodations she claims Defendant failed to provide. Defendant's argument is, however, misplaced. For a viable ADA claim, an employee with a disability need not request *specific* accommodations once her employer is made aware of her need for reasonable accommodations generally. *See Taylor*, 184 F.3d at 311; *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 248 (3d Cir. 2006); *Emmell*, 303 F. Supp. 3d at 329 ("[T]he employee's request for accommodation does not need to be specific or contain 'magic words.'"). Rather, once the employer is on notice of the employee's need for an accommodation, "it is the employer who must make the reasonable effort to determine the appropriate accommodation." *Armstrong*, 438 F.3d at 248 (citation omitted). Here, it is undisputed that Defendant knew of Plaintiff's physical limitations after her surgery and of her request for reasonable accommodations. As such, Defendants "knew about" Plaintiff's disability for ADA purposes. *See Taylor*, 184 F.3d at 319.

bathroom (*i.e.*, she requested a reasonable accommodation based on her known disability) and (2) no manager ever asked her to clean a bathroom again (*i.e.*, Defendant made a good faith effort to provide that accommodation, which was clearly reasonable based on the fact that it was provided). *See Taylor*, 184 F.3d at 319–20 (establishing the four-part test for failure to accommodate).

Based on the evidence of record, this Court finds that no reasonable factfinder could conclude that Defendant failed to accommodate Plaintiff's disability. Therefore, Defendant is entitled to summary judgment on Plaintiff's ADA and PHRA claims.

### *Race Discrimination*

Plaintiff also claims that Defendant engaged in "reverse" race discrimination in violation of § 1981[8] by terminating her employment because she is white. Defendant contends it is entitled to summary judgment on this claim because, *inter alia*, Plaintiff cannot establish a *prima facie* case of reverse race discrimination. This Court agrees with Defendant.

Generally, a claim under § 1981 requires the same elements an employment discrimination claim has under Title VII of the Civil Rights Act of 1964, but such a claim "is limited to issues of racial discrimination in the making and enforcing of contracts." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010). Claims of intentional discrimination brought under Title VII or § 1981 are generally analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Anderson*, 621 F.3d at 267–68 ("[T]he burden-shifting framework

---

[8]   In relevant part, § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a).

introduced by *McDonnell Douglas* . . . may be used to determine whether an employer has discriminated against a plaintiff in violation of § 1981."); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (applying framework to intentional discrimination claim). In addition to the *McDonnell Douglas* requirements, § 1981 claims also require the plaintiff to show that race was the *but-for* cause of the adverse employment action taken against the plaintiff by the defendant. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, — U.S. —, 140 S. Ct. 1009, 1014–15 (2020).

Although Plaintiff is not a member of a minority racial group, the Third Circuit has recognized discrimination claims by non-minorities under the *McDonnell Douglas* burden-shifting framework. *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999). Such a plaintiff must first establish a *prima facie* case of employment discrimination by showing that: (1) the plaintiff was qualified for the position, (2) the plaintiff suffered an adverse employment action, and (3) the adverse employment action occurred under circumstances that raise an inference of discrimination. *See Ellis v. Bank of N.Y. Mellon Corp.*, 837 F. App'x 940, 941 & n.3 (3d Cir. 2021) (citing *Jones v. Sch. Dist. of Phila.*, 189 F.3d 403, 410–11 (3d Cir. 1999)). The plaintiff must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco*, 190 F.3d at 161; *see also Kondrat v. Ashcroft*, 167 F. Supp. 2d 831, 835–36 (E.D. Pa. 2001).

Plaintiff advances four principal arguments in an attempt to establish her *prima facie* case of reverse race discrimination, *to wit*: (1) that the record contains inconsistencies as to Defendant's real motivation for firing her; (2) that the social media conversation surrounding the incident influenced Defendant's decision; (3) that though two FOSA forms were issued in her case, no additional evidence was gathered in the two-day period between them and, thus, a discriminatory

motivation must have been at play; and (4) that she did not violate any policy of Defendant. This Court finds these arguments unpersuasive.

In support of her claim, Plaintiff first points to inconsistencies in the record as to why Defendant claims it terminated her employment. Specifically, Plaintiff contends that Mr. Ramirez testified that Plaintiff was fired because she discriminated against a customer, while Ms. Schwartz indicated that Plaintiff was fired for her confrontational behavior, for her unprofessional treatment of a customer, and for violating the Non-Escalation Policy. Defendant disagrees that the testimony is inconsistent, emphasizing that Mr. Ramirez also testified that Plaintiff had violated the Non-Escalation Policy. In any event, whether Plaintiff was fired because she discriminated against the customer or because she violated a policy, or for both reasons, no reasonable factfinder could infer from this evidence that Plaintiff's employment was terminated because of her race. *Iadimarco*, 190 F.3d at 161.

Plaintiff also points to the social media discourse, arguing that Defendant "felt intervening pressure from people making false allegations of racial profiling and demanding that the white associate be fired for what happened to an African American customer." (Pl.'s Resp. in Opp., ECF 21-4, at p. 14). Plaintiff further contends that Mr. Ramirez's testimony indicating that Defendant "voiced concern[s] about the racial aspects of the incident" gives rise to an inference of discrimination. However, as Defendant notes, Plaintiff's argument is based solely on her speculation that had she not been white, she would have retained her job. Notably, the director panel, at the third level of the review process, did not discuss the customer's allegations of racial profiling when it affirmed Plaintiff's employment termination. Even assuming these external factors did influence Defendant's decision, Plaintiff has not shown that her race was the reason for her termination. Plaintiff also does not point to any evidence that Defendant treated any non-white

16

employee differently in a similar circumstance. Accordingly, Plaintiff has not demonstrated that Defendant treated some people less favorably than others based upon a protected trait. *Iadimarco*, 190 F.3d at 161.

Plaintiff also notes that the first FOSA form issued by Mr. Ramirez on August 20, 2019, cited the reason for her employment termination as "[o]n 8/18/2019 Maureen approached a customer and accused him of being a known shoplifter." (Pl.'s Resp. in Opp., ECF 21-4, at p. 16). That form resulted in a final warning. The second FOSA form, issued two days later, stated the same reason yet terminated her employment. Plaintiff argues that this indicates Defendant acted discriminatorily because the stated reason "was precisely the same reason given in support of an earlier lessor [sic] discipline given for the same incident." (*Id.* at p. 17). However, Plaintiff bases this argument on her contention that Defendant "did not gather additional evidence of any sort in between the two FOSAs." (*Id.*). This statement is unsupported by the record. On the contrary, Ms. Schwartz testified that she undertook additional investigative efforts between August 20 and August 22, leading Ms. Schwartz to reach the conclusion to terminate Plaintiff's employment. As such, the circumstances surrounding the issuance of the FOSA forms do not suggest that any discriminatory motivation was at play.

Lastly, Plaintiff argues that she did not violate any company policy. She maintains that she complied with both the Non-Escalation Policy and the policy against insubordination by telling the manager on duty, Mike, about the suspected shoplifter. She further contends that she "did not confront the customer, but was drawn into the conversation [by Mike], at which point she attempted to de-escalate the situation." (Pl.'s Resp. in Opp., ECF 21-4, at p. 17). While this Court construes the facts in the light most favorable to Plaintiff, it is notable that every person involved in the termination decision and review process who testified in connection with this lawsuit—Mr.

Ramirez, Ms. Schwartz, Ms. Hunt, Mr. Lilly, Ms. Mann, and Mr. Read—concluded that Plaintiff had violated the Non-Escalation policy. In addition, Mike—the manager who first confronted the customer—was also fired in connection with the incident.[9] Regardless, even accepting that Plaintiff did not violate the Non-Escalation Policy, she has presented no evidence that would "allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of'" her race. *Iadimarco*, 190 F.3d at 163 (citations omitted).

On a final note, even if Plaintiff could establish a *prima facie* case and meet the *McDonnell Douglas* standard, she cannot overcome the additional causation requirement recently imposed by the Supreme Court for § 1981 claims. *See Comcast Corp.*, 140 S. Ct. at 1014–15 (holding that the plaintiff must show race was the *but-for* cause of the adverse employment action for a successful § 1981 claim). There is no evidence from which a reasonable factfinder could conclude that Plaintiff's employment would not have been terminated were she not white. Defendant argues that it would have taken the same action against Plaintiff if she were "white, black, brown, male, female, young, old, gay, straight, disabled, or anything else." (Def.'s Reply, ECF 22, at p. 8). Nothing in the record could persuade a reasonable factfinder otherwise. Thus, having failed to show that her race was the *but-for* cause of her employment termination, Plaintiff cannot prevail on her § 1981 claim. On this argument, Defendant is entitled to summary judgment.

**CONCLUSION**

For the reasons stated, this Court finds that Plaintiff has not met her summary judgment burden under Rule 56 and has failed to "cite to particular parts of materials in the record" that

---

[9] It is telling that Plaintiff does not attempt to use this undisputed fact to bolster her argument that the circumstances surrounding her termination raise an inference of discrimination.

would create genuine disputes as to material facts regarding essential elements of her claims. Accordingly, Defendant's motion for summary judgment is granted, and judgment on all claims is entered in favor of Defendant.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.